UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEBRADRE D. JACKSON,

                Plaintiff,

v.                                             Case No. 17-cv-907-pp

MICHAEL KOWALCZYK, and
LT. LAUNDERVILLE,

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 4) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth Amendment rights at the Racine Correctional Institution. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 4, and screens the plaintiff's complaint.

**I. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 4)**

The Prison Litigation Reform Act applies to this case, because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The law gives an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial

1

filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 11, 2017, the court assessed an initial partial filing fee of $2.43. Dkt. No. 6. The court received a payment of $2.50 on July 19, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and

2

conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Complaint

The plaintiff alleges that on April 15, 2017, he was in Green Unit West, cell A206. Dkt. No. 1 at ¶ 6. He was walking from that location to the restricted housing unit at Waukesha West; he was in handcuffs. Id. at ¶6. Correctional Officer Mays (not a defendant) was on his left side, holding his left arm, id. at ¶7; defendant Kowalczyk was on his right, holding him by his right arm and

3

hand, id. at ¶8. Defendant Launderville was walking behind the three men. Id. at ¶9. As the plaintiff approached the top of the metal stairs, he slowed to take the first step down. Id. at ¶10. He alleges that Kowalczyk aggressively bent his hand, and yelled, "keep it moving." Id. at ¶11. The plaintiff fell down a couple of steps; the plaintiff alleges that it was Kowalczyk's bending of his hand that caused him to fall. Id. at ¶¶12-13. Mays helped the plaintiff back to his feet. Id. at ¶14. The plaintiff turned back to ask Kowalczyk "what his problem was;" Kowalczyk again told the plaintiff in an aggressive tone to turn around and keep moving. Id. at ¶15. Kowalczyk again "yanked on [the plaintiff's] arm and bent [the plaintiff's] hand," causing him to fall down about twelve more of the metal stairs—all while his hands were cuffed behind his back. Id. at ¶16. The plaintiff landed on his stomach; Mays landed on top of the plaintiff. Id. at ¶17. The plaintiff says that he yelled out in pain, and yelled that he couldn't feel his legs and that his neck and back hurt. Id. at ¶18. Mays and Kowalczyk attempted to get the plaintiff back on his feet, but the plaintiff says that his legs were numb, and that he couldn't stand. Id. at ¶19. The plaintiff then says that he was shackled at his feet—he doesn't say by whom—and given a wheel chair, in which he rolled to Waukesha West Unit. Id. at ¶20.

The plaintiff says that he asked for medical assistance, but that defendant Launderville denied him his request. Id. at ¶21. The plaintiff continued to ask for assistance, but didn't get it, and he became angry. Id. at ¶22.

4

When the plaintiff arrived at the restricted housing unit, he says, he was "forced by a direct order to stand and get out of the wheel chair to be locked inside a shower," despite the fact that whoever issued the order knew he was in pain. Id. at ¶23. He was left in the shower for somewhere between forty-five minutes and an hour; he had to eat dinner there. Id. at ¶24. The plaintiff alleges that Launderville was the person who ordered that he be kept in the shower until Launderville could come back to talk to the plaintiff (the plaintiff heard this from another sergeant). Id. The plaintiff says that while he was in the shower, he saw a captain and asked for medical attention; that captain ordered Launderville to contact the Health Services Unit. Id. at ¶25. The plaintiff says that Launderville contacted the on-call nurse, and but didn't explain what had happened on the stairs. Id. at second ¶25 (the plaintiff's complaint contains two paragraphs numbered 25). He alleges that Launderville "deliberately fabricated" the reason the plaintiff needed medical attention. Id. at ¶17. The plaintiff says that the on-call nurse reported that the HSU had received a call from a lieutenant who reported that while the plaintiff was being taken to Waukesha West, he'd "demanded to be pushed in a wheelchair like a boss and if you don't push me, I'll throw myself down the stairs." Id. at ¶26. The plaintiff asserts that this resulted in the nurse not wanting to see him, or give him medical attention; he says that he did not receive medical attention until twenty-four hours later, despite having neck, back and leg injuries. Id. at ¶¶ 27-28.

C. <u>Legal Analysis of Alleged Facts</u>

The plaintiff asserts that Kowalczyk used excessive force against him, in violation of the Eighth Amendment, and that Launderville was deliberately indifferent to his serious medical needs in violation of that same amendment.

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Village of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)).

1. *Excessive Force*

The Eighth Amendment prohibits prison guards from using excessive force against an inmate for the purpose of causing harm. <u>Fillmore v. Page</u>, 358 F.3d 496, 503–04 (7th Cir. 2004). The central question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320–21 (1986)). "To be cruel and unusual punishment, conduct . . . must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." <u>Guitron v. Paul</u>, 675 F.3d 1044, 1045–46 (7th Cir.2012) (quoting <u>Whitley</u>, 475 U.S. at 319).

6

The plaintiff has stated sufficient facts, at this early stage, to allow him to proceed on a claim of excessive force against Kowalczyk. The plaintiff has alleged that, for no reason, Kowalczyk twice bent his hand, and once yanked on his arm, causing the plaintiff's fall down the metal stairs. The plaintiff has asserted that he wasn't being violent or resistive—he implies that Kowalczyk used this force for no reason. At this point, that is sufficient for the court to allow the plaintiff to proceed on his Eighth Amendment excessive force claim against Kowalczyk.

2. *Deliberate Indifference*

"Prison officials violate the Eighth Amendment . . . when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). A prison official shows deliberate indifference when he has knowledge of the inmate's serious medical condition and either acts, or fail to act, in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Id.

The plaintiff alleges that upon arrival in Waukesha West Unit, Launderville—who had reason to know that the plaintiff had fallen down a series of metal steps and had been unable to stand afterward—denied his requests for medical attention, and ordered that he be required to stand in the shower for forty-five minutes to an hour. He alleges that Launderville called

7

HSU only when he was ordered to do so, and then provided the HSU with false, or misleading, information about how the plaintiff was injured. As a result, the plaintiff had to wait twenty-four hours for medical care.

The court will assume, for the purposes of screening the complaint, that the plaintiff's injuries that day were a serious medical condition. Given that, the court finds that the plaintiff has stated sufficient facts to allow him to proceed on an deliberate indifference claim against Launderville.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 3. The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $**347.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary shall clearly identify the payments by the case name and number. The Clerk of Court will send a copy of this order to the warden of the Racine Correctional Institution where the plaintiff is confined.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on defendants Kowalczyk and Launderville.

The court **ORDERS** that the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should, however, retain a personal copy of each document he files with the court.

The court advises the plaintiff that if he does not file documents or take other actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 13th day of June, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**